803 So.2d 1271 (2002)
Patrick BARNES, Appellant
v.
STATE of Mississippi, Appellee.
No. 2001-CP-00370-COA.
Court of Appeals of Mississippi.
January 8, 2002.
*1272 Patrick Barnes, Appellant, pro se.
Office of the Attorney General by John R. Henry Jr., Booneville, Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. Following indictments by the grand jury, Patrick Barnes pled guilty to charges of four counts of uttering forged instruments before the Circuit Court of Lee County, Mississippi, the Honorable Fred Wicker presiding. After hearing Barnes's guilty plea and discussing with Barnes the consequences of such guilty plea, Judge Wicker accepted Barnes's plea as having been made voluntarily, knowingly and intelligently. Barnes was thereafter sentenced to ten years on Count I with seven years suspended, ten years on Count II with eight years suspended, ten years on Count III with five years suspended, and ten years on Count IV with five years suspended, for a total of fifteen years to be served in the Mississippi Department of Corrections. Barnes was also required to make restitution to his victims.
¶ 2. On October 11, 2000, Barnes filed his motion for post-conviction relief. That motion was dismissed by the trial court on February 8, 2001, and Barnes appealed to the Mississippi Supreme Court seeking reversal of such dismissal. Barnes now comes before this Court raising the following issues:
1. WHETHER BARNES ENTERED HIS GUILTY PLEA VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY AS REQUIRED BY MISSISSIPPI LAW; AND
2. WHETHER BARNES'S GUILTY PLEA SHOULD BE OVERTURNED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 3. Having found no error in refusing to grant post-conviction relief, we affirm.

FACTS
¶ 4. Barnes was indicted by the grand jury on August 2, 1996, on four counts of uttering forged instruments in violation of Mississippi Code Annotated section 97-21-59 (Rev.2000). On November 4, 1997, Barnes appeared in open court before Circuit Judge Wicker to enter his plea of guilty to all four counts of the indictment.
*1273 ¶ 5. Before such plea was accepted, Barnes was thoroughly questioned under oath. Judge Wicker, in an effort to determine whether Barnes's guilty pleas were being entered voluntarily, knowingly and intelligently, questioned Barnes on his understanding of the rights he was waiving by pleading guilty. Further, Judge Wicker also interrogated Barnes as to his counsel, Michael G. Thorne. Barnes assured the judge that he understood all of his rights, the waiver of those rights by pleading guilty, the maximum sentences that he could receive for his crimes and all other consequences a guilty plea would necessarily bring him. Barnes further confirmed to the judge that he was content with Thorne as his attorney and that Thorne had provided him with competent advice and counsel.
¶ 6. Based upon Barnes's written petitions to plead guilty and his acknowledgments and confessions before the trial judge in open court at the plea acceptance hearing, the trial court found that Barnes's plea was voluntarily, knowingly and intelligently made. Following the recommendations of the State, the court sentenced Barnes to serve a total of fifteen years in the custody of the Mississippi Department of Corrections and to make restitution to his victims.
¶ 7. In Barnes's motion for post-conviction relief, he contended he was deprived of effective assistance of counsel, and that his guilty plea was not knowingly, willingly and voluntarily made, although this motion contained no specific examples supporting his contentions. This motion was dismissed, thus causing Barnes to appeal to this Court. Barnes did not filed any affidavits in support of his appellate brief for the benefit of this Court. The only "affidavit," although not specifically given this proper name, found in the court papers is a subsection of Barnes's motion for post-conviction relief. This subsection, entitled "Specific Statement of Facts that `Are' Within Petitioner's Personal Knowledge Pursuant to M.C.A. 99-39-9(1)(2)", does not say anything that benefits the claim of the petitioner to be heard. There were no further affidavits filed with either the lower court or this Court to support Barnes's claims.

STANDARD OF REVIEW AND LEGAL ANALYSIS

1. Whether Barnes entered his guilty plea voluntarily, knowingly and intelligently as required by Mississippi law
¶ 8. Barnes submits to this Court that, despite the monumental evidence in the record indicating that he fully understood all of the consequences of his guilty plea, he actually did not plead guilty voluntarily, knowingly and intelligently because he was intoxicated and was forced into his guilty plea by his own attorney. The United States Supreme Court case of Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), provides the standard for determining whether a guilty plea is knowingly, voluntarily and intelligently made by a defendant. See also Vittitoe v. State, 556 So.2d 1062 (Miss. 1990). The privileges and rights waived by a guilty plea include the right against compulsory self-incrimination, the right to a trial by jury and the right to cross-examine witnesses. Boykin, 395 U.S. at 243, 89 S.Ct. 1709. Where the record is silent as to evidence showing that these rights were known and understood by the defendant, there can be no presumption of a waiver of such rights by him. Id. at 242, 89 S.Ct. 1709.
¶ 9. The record must provide explicit evidence of such a waiver and the admissibility of the waiver must be "based on a reliable determination on the voluntariness" of the waiver. Id. This determination *1274 of voluntariness may be evaluated by looking to see whether the defendant was advised of the nature of the charges against him, the rights which he would be waiving by pleading guilty, the maximum sentences that he could receive for the crimes with which he was charged and whether he was satisfied with the advice and counsel of his attorney. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992). See also Wilson v. State, 577 So.2d 394, 396-97 (Miss.1991); Boykin, 395 U.S. at 243, 89 S.Ct. 1709.
¶ 10. The burden of proving that a guilty plea was not made voluntarily is on the defendant. Gardner v. State, 531 So.2d 805, 810 (Miss.1988); Baker v. State, 358 So.2d 401, 403 (Miss.1978). If this burden is not met, the defendant's plea must be upheld as one that was made voluntarily, knowingly and intelligently. Gardner, 531 So.2d at 810. It should be noted that "[s]olemn declarations in open court [by a defendant] carry a strong presumption of verity." Id.; Baker, 358 So.2d at 403. See also Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Further, the record must reflect that the trial court thoroughly discussed with the defendant all of the consequences of a guilty plea, including the waiver of rights, satisfaction with one's attorney and advisement on the maximum and minimum penalties one can acquire for the crime committed. Alexander, 605 So.2d at 1172; Gardner, 531 So.2d at 809-10.
¶ 11. A guilty plea may not be accepted where the defendant did not plead of his own volition. Boykin, 395 U.S. at 243, 89 S.Ct. 1709. As the United States Supreme Court provided in Boykin, "a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." Id. See Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Aside from incidents where defense counsel simply neglects his client's case or makes negligent fatal errors in the case, ineffective assistance of counsel may include instances where a defendant's attorney misrepresents information regarding the plea to the defendant, thereby inducing him to plead guilty. Myers v. State, 583 So.2d 174, 177 (Miss.1991). Similarly, counsel would be defective if defense counsel purposefully lies to the defendant or asks the defendant to lie in court proceedings regarding his plea. Id. In such situations, it is likely that the plea could be successfully attacked by the defendant as involuntary. Id.
¶ 12. In accordance with the aforementioned case law, we find that the lower court was correct in accepting Barnes's guilty plea and denying him post-conviction relief. Because of the ample evidence provided to us in the record, we are convinced that Barnes entered his plea voluntarily, knowingly and intelligently, and it should therefore be upheld.
¶ 13. We are of the opinion that the transcript of the plea hearing speaks volumes to the issue of voluntariness. Judge Wicker specifically asked Barnes whether he was aware that by pleading guilty, he was giving up certain constitutional rights, after which he named those rights for Barnes. Barnes clearly answered that he understood and proceeded to admit that he committed all four of the crimes with which he had been charged. In addition, Judge Wicker asked Barnes a number of questions required of him under the law, including whether Barnes had been coerced into pleading guilty; whether he was satisfied with the advice and counsel of Thorne throughout the time he was Barnes's attorney; whether Thorne explained the ramifications of a guilty plea; whether Barnes was under the influence of *1275 alcohol or drugs at the time of the plea hearing or was otherwise impaired; whether Barnes understood the maximum and minimum penalties to which he could be sentenced for these crimes; and whether or not Barnes actually committed these crimes. See Alexander, 605 So.2d at 1172 (explaining the trial judge's duties to inquire of the defendant whether he fully understands what he is giving up and what may happen as a result of his guilty plea).
¶ 14. Not only did Barnes point blank admit to each of the four crimes in open court, but he maintained before the judge and all present at the hearing, including Thorne, that he was satisfied with Thorne as his attorney. According to the transcript, Barnes further made it crystal clear to all listening that he understood that his guilty plea would serve as a waiver to all of those constitutional rights that Judge Wicker had mentioned. Barnes answered that he was aware of and accepted any possible statutory penalties he could receive for his crimes. Finally, he stated with certainty that he was not being coerced and that he was not under the influence of any form of impairing drug. However, despite all of this, Barnes would now have us believe that all of this was some sort of illusion or untruth-that he, in fact, was intoxicated and forced to plead guilty because Thorne left him with no other choice by telling Barnes that he did not have time or money to adequately prepare for a trial in this matter. Barnes asserts that because his court-appointed counsel was an employee of the state and was not sufficiently paid resulting in counsel's failure to properly investigate and he was literally forced into pleading guilty, even knowing the repercussions of doing so which included the heavy burden he would have to meet to have his plea overturned. We are not so convinced of this unlikely claim.
¶ 15. First, Barnes's current contentions before this Court plainly indicate that he either lied to the trial court or is lying to this Court about the voluntariness of his plea. Furthermore, Barnes has given this Court no plausible evidence on which we may rely to overturn the decision of the trial judge to accept Barnes's plea. The credible evidence before us, including the transcript of the plea hearing before Judge Wicker, points to the inescapable fact that Barnes made his decision to plead guilty on his own, without coercion and without misrepresentation, thereby waiving his right to a trial by a jury of his peers. We do not believe that Barnes has met his very high burden of proof to show that he did not understand what he was agreeing to or that he was pressured or intimidated into executing the petitions for guilty pleas.
¶ 16. The time for Barnes to have brought such an injustice to light was at his plea hearing before Judge Wicker. Instead, Barnes stated in open court all of the information to which he swore was truthful during the thorough interrogation by Judge Wicker, thereby losing his opportunity to make a viable case of coercion or incomprehension. In Gardner v. State, the court ruled that there would be a presumption of verity on the part of the defendant where he makes forthright declarations in open court. Gardner, 531 So.2d at 810. Therefore, we can only deduce that Barnes was telling the truth at his plea hearing rather than now, on appeal.
¶ 17. Regarding Barnes's argument that he was intoxicated at the time he entered his plea, we find the evidence to the contrary. His brief states that he answered "yes" when the judge asked him about intoxicating beverages. The question asked of Barnes was one in the negative. Specifically,

*1276 THE COURT: All right. In otherin other words, you have not had any-any intoxicating liquor or drug?
BARNES: Yes, sir.
As the record clearly indicates to this Court, Barnes answered the negative question in the affirmative which we take to mean, yes, sir, he has not had any intoxicating liquor or drug. The questions asked by the trial court are required for the protection of the defendant. Rule 8.04(A)(3) of the Uniform Circuit and County Court Rules provides that where the defendant wishes to plead guilty the trial court has an affirmative duty to determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. Furthermore, this rule requires that the plea of guilty was voluntarily and intelligently made must appear in the record. URCCC 8.04(A)(3). This Court is of the opinion that the trial court sufficiently determined that the defendant voluntarily waived his constitutional rights and desired to enter a plea of guilty.
¶ 18. This issue is without merit.

2. Whether Barnes's guilty plea should be overturned due to ineffective assistance of counsel
¶ 19. We hereby find this issue to be without merit under applicable case law. We note that the brief of the appellant and the motion for post-conviction relief containing a quasi affidavit is Barnes's only offering to this Court to rebut the State's evidence that Thorne provided Barnes with adequate counsel. Barnes does not offer this Court any other proof, such as a proper affidavit setting forth specific acts of ineffective assistance of counsel. However, his brief alleges, among other things, that it was the fault of Thorne that he pled guilty to the crimes with which he was charged.
¶ 20. It should be noted Barnes's brief and quasi affidavit alone would not be enough for this Court to reverse on the grounds of ineffective assistance of counsel. Coleman v. State, 772 So.2d 1101, 1102 (¶ 7) (Miss.Ct.App.2000). See also Lindsay v. State, 720 So.2d 182, 184 (Miss. 1998). "Where a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit." Coleman, 772 So.2d at 1102 (¶ 7) (quoting Vielee v. State, 653 So.2d 920, 922 (Miss.1995)). See also Brooks v. State, 573 So.2d 1350 (Miss. 1990).
¶ 21. In order to make out a case for ineffective assistance of counsel, Barnes must prove that Thorne's performance as his attorney was deficient and that the deficiency was so substantial as to deprive Barnes of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985); Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). Barnes must prove both of these elements in order to succeed on his claim. Id. Each case should be decided based on the totality of the circumstances, that is, by looking to the evidence in the entire record. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990); Stringer, 454 So.2d at 476. The standard of performance used is whether counsel provided "reasonably effective assistance." Leatherwood, 473 So.2d at 968. "There is a strong presumption that counsel's conduct is within the wide range of reasonable professional conduct." Id. at 969.
¶ 22. While the record shows that Thorne was present at the time of the plea acceptance hearing during Judge Wicker's interrogation, even asking questions of Barnes in an effort to alleviate any of his confusion, there is absolutely no evidence which would tend to advance Barnes's theory that Thorne was deficient or that he *1277 forced Barnes to plead guilty. There is nothing in the record to indicate that Thorne did anything more than be available to his client and advise him on the ramifications of pleading guilty versus pleading not guilty and taking his chances at trial. There is no evidence that such an injustice exists here.
¶ 23. Again, the plea hearing transcript completely negates all of Barnes's assertions against Thorne. Barnes clearly stated before Judge Wicker that he was satisfied with his attorney, that he was content with the advice and counsel of Thorne and that he was voluntarily pleading guilty and admitting to the four crimes for which he was charged. As such, we accept the truth to be the version told by Barnes in open court under oath before Judge Wicker rather than the version in Barnes's brief supported by nothing but his self-serving affidavit. See Gardner, 531 So.2d at 810.
¶ 24. For the foregoing reasons, we affirm the denial of post-conviction relief.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY DENYING POST CONVICTION RELIEF IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.